MARK BYRON CHRISTMAN *v.* SUSAN CROSS JONES, ADMINISTRATRIX

73-39                                                  497 S.W. 2d 14

Opinion delivered July 16, 1973

*Robert D. Smith Jr.* and *Robert D. Smith III,* for appellant.

*Charles Mott Jr.,* for appellee.

*Howell, Price, Howell & Barron,* for Amicus Curiae, *Marie Cross,* widow.

GEORGE ROSE SMITH, Justice. The appellant, Mark Byron Christman, now 23 years old, was born out of

wedlock. His father, Ernest Byron Cross, died intestate in Saline county in January, 1972. Mark filed the present petition in the probate court, asking that he be declared to be the decedent's legitimate son and heir. The present statute, and an earlier one to the same effect, provide that Mark is to be deemed and considered legitimate if he makes the threefold showing (*a*) that Ernest was in fact his father, (*b*) that after Mark's birth Ernest married Mark's mother, and (*c*) that Ernest recognized Mark as being his child. Ark. Stat. Ann. § 61-141 (b) (Repl. 1971); Pope's Digest (1937), § 4341.

The probate judge found, upon proof that is practically undisputed, that conditions (*a*) and (*b*) had been proved. The court denied the petition, however, on the ground that the evidence did not show that Ernest had recognized Mark as his son. The only question on appeal is whether the court's conclusion upon point (*c*) is clearly contrary to the preponderance of the evidence. We are unanimously of the opinion that it is.

Mark's birth certificate shows that he was born in Pulaski County on February 24, 1950. According to the certificate, Mark's father was Ernest Byron Cross (the decedent), and his mother was Verna Juanita Vondran (now Verna Juantia Christman). Ernest was married to another woman at the time, but he was living with Mark's mother. Ernest obtained a divorce and thereafter married Mark's mother on March 19, 1952. That marriage was terminated by a divorce which Ernest obtained in Pulaski county on April 6, 1953. After that divorce Mark did not see his father until about three years before Ernest's death.

Mark's mother testified that Ernest paid the medical and hospital bills incident to Mark's birth. She states that Ernest saw the birth certificate many times and never objected to it or denied that Mark was his son. Another witness, Mamie Vondran, knew Ernest when Mark was born and testified that Ernest always told her that Mark was his son.

In addition to the proof that Ernest recognized Mark as his son during the interval between Mark's birth in

1950 and Ernest's divorce from Mark's mother in 1953, there is convincing testimony that Ernest also recognized Mark as his son during the last few years of Ernest's life. Ernest was then living in Little Rock. Mark moved to Little Rock in 1969 and, at his mother's suggestion, telephoned his father. According to Mark, he lived with his father from time to time and was introduced by Ernest as his son. That testimony is corroborated by two disinterested witnesses who worked with Ernest at the Employment Security office and who testified that Ernest referred to Mark as "my boy" and as "my son." On the other hand, Ernest's widow (his third wife) testified that Ernest definitely stated that Mark was not his son, but she is pecuniarily interested in the estate and has filed a brief in this court in support of the probate court's judgment.

The trial judge, in announcing his decision at the close of the case, placed his sole emphasis upon a sworn questionnaire filed by Ernest in the Pulaski chancery court when he divorced Mark's mother in 1953. In that questionnaire—a printed form apparently required by rule of court—Ernest stated that no children were born "of this union." That statement was actually true, since Mark was not born during the marriage. Moreover, in the same proceeding Mark's mother wrote to the attorney ad litem and said in her letter: "Would you tell me if Ernest wants to support our child [or] has he not told you that we have a three year old son." Upon the proof as a whole we are convinced that Ernest, upon a number of occasions, acknowledged Mark to be his son, as he certainly was.

Reversed.